Albert Baer, Appellant, *v.* Charles W. Bonynge, Respondent.

| 147 | 393 |
| --- | --- |
| s 148 | 738 |

Agreement to Give a Lease — Principal and Agent. An action cannot be maintained to recover damages as for a breach of an agreement by the defendant to give a lease of a building, when the facts show that the building was not owned by the defendant; that the only contract contemplated between the parties was one between the plaintiff and the owner of the building; that the attitude of the defendant was that of the owner's adviser, upon whose judgment as to the terms of the lease the owner was expected to rely; and that the defendant did not bind himself personally, conceding that he might have done so although known to be the agent of the owner and acting in that capacity.

Reported below, 72 Hun, 33.

(Argued October 18, 1895; decided November 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 19, 1893, which overruled plaintiff's exceptions ordered to be heard in the first instance at General Term and dismissed the complaint.

The nature of the action and the facts, as stated by Mr. Justice FOLLETT in connection with the opinion at General Term, are as follows :

This action was brought for the recovery of damages resulting from the defendant's refusal to execute a lease to the plaintiff. Amos R. Eno, the former owner of No. 922 Broadway, leased it until May 1, 1891, to John W. Salter, who assigned his lease to the plaintiff, under which the plaintiff occupied the premises for a butcher's shop and market for four years. Whether he occupied the whole or but part of the premises does not appear. At some time prior to 1890, Eno conveyed the premises to Rodie S. Bonynge, the defendant's wife. The plaintiff testified that five or six months before October 27, 1889, which would be in May or June, he had a conversation with defendant about a new lease, in which it was stated, "I (plaintiff) told him (defendant) I wished to renew the lease, as I wished to make some alterations about the building, and if I would not get the lease I would not do it; so he said, 'You can go right ahead. No one will get the lease but you.' I said, ' I am never sure of anything unless I have it. I would rather have it in my pocket than wait for it.' He said, ' You can take my word for it. That is all you will have, my word ; you can go ahead and paint the house and do all the repairs you want.' So he said, ' You can go ahead with all the alterations you want to do.' I said I wanted to put a new front in the building, as it was getting a kind of old now and bad, and he said, ' You can go right ahead.' So I went and got the house painted, and got the roof fixed, and got the sidewalk all around fixed, and put the building in good condition."

September twenty-fourth defendant wrote the plaintiff as follows :

"LONDON, *Sept. 24th.*

"DEAR SIR.— I would have been in New York before this. * * * However, I am due in New York in the first week of November, and will call and see you. Have not offered the lease to anyone. Glad to hear you are doing well.

"Very truly,

"C. W. BONYNGE."

Early in November the plaintiff received from the defendant the following letter:

"42 PRINCE'S GATE, LONDON, *Oct.* 27, '89.

"DEAR MR. BAER.— I expect to be in New York a week or so after this letter reaches you; and if you wish to renew a lease, please have the names of the parties you offered to go on your security ready to submit, as I will be there but a short time. I hope to find the building painted, and that the roof has been put in good condition as agreed on. I need not tell you other people want it. Hope you have a good business and doing well.

"Very truly,

"C. W. BONYNGE."

The defendant returned to New York the first week of November, when he called on the plaintiff and told him that he would let him know the terms of the lease within a few days; that he would get an appraiser and see what the lease was really worth. A few days afterwards the defendant gave the plaintiff the following documents:

"FIFTH AVENUE HOTEL,

"MADISON SQUARE, NEW YORK,

"*Friday.*

"DEAR MR. BAER.— I had a valuer to-day to look at building and situation, a man of very good judgment, and I asked him to make a fair estimate of the rent for the next ten years. I told him what you were paying and what I thought it worth. He said I was much too low; that since Salter took that lease property and rents had gone up there fully forty per cent, and he put the lease of the same nature

as the present at $14,000 a year. So I have made up my mind to drop $1,000 off this and make it $13,000 for the next ten years. You to make any terms you like about the upper portion of the building, but you must let me know what the rent of the basement is to be and have it agreed on; from what I hear I would not make his lease less than $3,000 a year.

"Now let me tell you what I find. · When Salter went in there the rent from the basement was only $900 the first year, then $1,200, and the rooms up stairs $2,500, making, say, $3,500 in all for the first two years. Take his rent and taxes at $12,000 and deduct the $3,500, and you find Salter paid $8,500 for his part ten years ago. Now, if you wish to have it at $13,000, say, with taxes, $15,000, deduct basement, $3,000, rooms, $3,500, making $6,500, making your rent just the very same as Salter paid ten years ago. This is my conclusion after getting two very good opinions on it. I inclose a card with my ideas of the lease.

"Yours truly,
"C. W. BONYNGE.

"We think inside of ten years this lease will be a very low one."

"Rent, $13,000 with, in addition, to pay all taxes and improvements. Roof to be painted every year, outside of building every three years. Rent in gold coin to be paid July 1st, October 1st, January 1st, April 1st. No structures to be allowed in or about the building nor on the roof. No flag-staffs or anything similar to be permitted.

"Violations to work forfeiture of lease. No transfer of lease without consent of owner. Two good signers to be provided. Taxes, water to be paid on maturity and receipts for same furnished the owner. No objectionable business to be allowed on premises."

The day following the receipt of these documents the plaintiff told the defendant he would accept the terms offered, and a few days afterwards the defendant procured to be drafted in duplicate a proposed lease, the material parts of

which are as follows: "Lease dated November 28, 1890, between Rodie S. Bonynge, of St. Louis, Missouri (but now temporarily residing in London, England), and Albert Baer, duly executed and acknowledged by said Baer, demises the lot of land and building 922 Broadway, New York city, for the term of ten years from May 1st, 1891, at the yearly rent of thirteen thousand dollars in gold coin, payable in quarterly payments on the first days of July, October, January and April, containing the usual covenants and the following special provisions : That the tenant will pay on maturity the annual rent or charge for Croton water, and deliver to the landlord proper receipts showing such payment ; that the tenant will also pay on maturity all taxes and deliver proper receipts showing such payment; that the tenant will, at his own expense, do all the repairs and keep and maintain the premises in good condition, and will not permit any flagstaff or poles on the roof, will paint the roof once in each year, and the whole building inside and out once in every three years, the first painting to be completed by August 1, 1891 ; that the tenant will not assign the lease or underlet without the written consent of the landlord, and will not use the premises for any purpose deemed extra hazardous or a nuisance, and th    if default be made in any of said covenants, the landlord r     re-enter and re-possess the premises.    There are also of      .nts that in case the premises be destroyed by fire the landlord shall have the right to cancel the lease and apportion the rent, unless she elect to repair, in which case the repairs shall be made with reasonable dispatch, and during the period of repairs no rent shall accrue; also, that in case of an assessment for public improvement six per cent interest on the amount of such assessment shall be added to the rent."

The plaintiff signed the proposed lease and procured Samuel Lichenstein and Lewis Samuels to execute and acknowledge the guaranty indorsed thereon.    Thereupon the plaintiff personally mailed one of the duplicates so executed to the defendant's wife at London for execution by her.    A few days after the duplicate had been mailed the defendant told the plaintiff

that he should write and advise his wife not to execute it because the plaintiff refused to lease the basement to Mr. Streuver for ten years at not less than $3,000 per year. The defendant's wife refused to execute the lease, and December 20, 1890, this action was brought, and May 1, 1891, the plaintiff vacated the premises which had been leased to another person.

*Albert Stickney* for appellant. Aside from the question under the Statute of Frauds, and the one arising from defendant's agency, the evidence shows a valid agreement, in its terms binding only the defendant to give plaintiff a lease, in consideration of plaintiff's agreement to make repairs and alterations and execute the lease on his part, with full performance by plaintiff accepted by defendant. (*L'Amoreux* v. *Gould*, 7 N. Y. 349; *Willets* v. *S. M. Ins. Co.*, 45 N. Y. 45; *Sands* v. *Crooke*, 46 N. Y. 564; *White* v. *Baxter*, 71 N. Y. 254; *Miller* v. *Mackenzie*, 95 N. Y. 575; *Bohm* v. *Goldstein*, 53 N. Y. 634; *Townsley* v. *Sumrall*, 2 Pet. 170; *Rector* v. *Teed*, 120 N. Y. 583.) There being an otherwise valid contract, fully performed by plaintiff, with performance accepted by defendant, the defendant's two letters, with the card mentioned and inclosed in the second, constitute a sufficient " note or memorandum in writing," within the Statute of Frauds. (*Ballard* v. *Walker*, 3 Johns. Cas. 60; *Clason* v. *Bailey*, 14 Johns. 484; *M'Crea* v. *Purmort*, 16 Wend. 460; *Justice* v. *Lang*, 42 N. Y. 493; *Raubitschek* v. *Blank*, 80 N. Y. 478, 482; *Mason* v. *Decker*, 72 N. Y. 595, 598; *Worrall* v. *Munn*, 5 N. Y. 229, 246; *Sievewright* v. *Archibald*, L. R. [17 Q. B.] 103, 114; *Peabody* v. *Speyers*, 56 N. Y. 230; *Tallman* v. *Franklin*, 14 N. Y. 584; *Peck* v. *Vandemark*, 99 N. Y. 29; *Pinckney* v. *Hagadorn*, 1 Duer, 89; *Barney* v. *Forbes*, 118 N. Y. 580, 584; *Beckwith* v. *Talbot*, 95 U. S. 289; *Thompson* v. *Menck*, 4 Abb. Ct. App. Dec. 400; *A. Co.* v. *Mayor, etc.*, 55 N. Y. 495; *Barry* v. *Coombe*, 1 Pet. 640; *Mentz* v. *Newwitter*, 122 N. Y. 491; *Bailey* v. *Sweeting*, 9

C. B. [N. S.] 857; *Gibson* v. *Holland*, L. R. [1 C. P.] 1; *Mactier* v. *Frith*, 6 Wend. 102, 114; *Trevor* v. *Wood*, 36 N. Y. 307; *Howard* v. *Daly*, 61 N. Y. 362; *Reuss* v. *Picksley*, 4 H. & C. 588; *Dana* v. *Fiedler*, 12 N. Y. 40; *Ryerss* v. *Wheeler*, 22 Wend. 148; *Fish* v. *Hubbard*, 21 Wend. 652; *Waring* v. *Ayres*, 40 N. Y. 357; *McDonald* v. *Longbottom*, 1 E. & E. 977; *Shardlow* v. *Cotterell*, L. R. [20 Ch. Div.] 90; *Mead* v. *Parker*, 115 Mass. 413.) Inasmuch as both the oral agreement and the written memorandum, by their terms, make no mention of any principal, and purport to bind only a defendant personally, even assuming that plaintiff understood defendant to be an agent, the mere fact of agency is not competent to discharge the defendant's personal liability. (*Paice* v. *Walker*, L. R. [5 Ex.] 173; *De Witt* v. *Walton*, 9 N. Y. 571; *Pumpelly* v. *Phelps*, 40 N. Y. 59; *Moss* v. *Livingston*, 4 N. Y. 208; *Schmittler* v. *Simon*, 101 N. Y. 554, 559; *Tanner* v. *Christian*, 4 El. & Bl. 591; *Lennard* v. *Robinson*, 5 El. & Bl. 124; *Cooke* v. *Wilson*, 1 C. B. [N. S.] 153; *Mills* v. *Hunt*, 20 Wend. 431; *Nash* v. *Towne*, 5 Wall. 689; *Orchard* v. *Binninger*, 51 N. Y. 652; *Phelps* v. *Borland*, 30 Hun, 362; *Lincoln* v. *Crandell*, 21 Wend. 100; *A. C. Bank* v. *Leonard*, 40 Barb. 119; *Chappell* v. *Dunn*, 21 Barb. 17; *Higgins* v. *Senior*, 8 M. & W. 834; *Jones* v. *Littledale*, 6 Ad. & El. 486.) The point that the agreement to lease was on a condition is directly in conflict with the evidence. (*Woolsey* v. *Funke*, 121 N. Y. 87; *Nicholl* v. *Sands*, 131 N. Y. 19; *Bracco* v. *Tighe*, 75 Hun, 140; *McMasters* v. *W. C. M. Ins. Co.*, 25 Wend. 379; *Rogers* v. *T. I. Co.*, 6 Paige, 583.) This case is one of a virtual fraud by defendant, wherein the plaintiff has overwhelming equities. (*Malins* v. *Brown*, 4 N. Y. 403; *Freeman* v. *Freeman*, 43 N. Y. 37; *Miller* v. *Ball*, 64 N. Y. 286; *Driggs* v. *Dwight*, 17 Wend. 71; *Dodds* v. *Hakes*, 114 N. Y. 260.)

*George L. Rives* for respondent. The defendant having acted only as agent was not liable personally. (Mechem on Agency, §§ 550, 551; *Ogden* v. *Raymond*, 22 Conn. 379;

*Pumpelly* v. *Phelps*, 40 N. Y. 59; *De Witt* v. *Walton*, 9 N.
Y. 571.) There was no sufficient contract in writing under
the Statute of Frauds. (*Justice* v. *Lang*, 42 N. Y. 493; 52
N. Y. 323; Benjamin on Sales, § 39.) The correspondence
between the parties did not constitute a complete agreement.
(Wood's Landl. & Ten. [2d ed.] § 186; *C. T. Co.* v. *Smith*,
47 Hun, 494.)

FINCH, J. If the conclusion of the General Term in this
case, that the defendant did not bind himself personally, is
correct, it determines the result without need of a considera-
tion of the question raised as to the effect of the Statute of
Frauds. The action against him was to recover damages for
a breach of an agreement to give plaintiff an extended lease
of the premises occupied by him. A former owner of the
property had given a lease which, by an assignment, had
passed to the plaintiff, and the property itself had been con-
veyed to the defendant's wife. That fact was well known to
the plaintiff and when he asked the husband for a renewal
of his lease it plainly implied that his contract was to be with
the wife, as owner, and that his negotiations with the husband
were steps to that end.

At their conclusion the proposed new lease was drawn
between the wife as lessor and the plaintiff as lessee, and the
latter insisted on himself mailing it to her in London, for the
purpose of its final execution.

These facts tend to show that the only contract contem-
plated between the parties was one between plaintiff and the
wife of the husband, and that the understood attitude of the
defendant was that of her adviser, upon whose judgment as
to the terms of the lease she was expected to rely. The
letter and memorandum of the defendant, read in the light of
these facts, disclose no other intention or purpose on his part,
and justify no other interpretation on the part of plaintiff.

He could hardly misunderstand what was explicitly stated,
that the defendant was giving his ideas of the lease, that is,
his judgment of the terms and conditions which his wife

ought to require, and which he should advise her to insist upon.

There is no agreement, either in letter or memorandum, that the defendant will give a lease or procure one to be executed. Conceding, that although known to be the agent of his wife and acting in that capacity, he might nevertheless have bound himself personally, it is quite apparent that he did not do so by any language having that meaning, and that all he said and wrote was in the character of an adviser of his wife, and as an effort to agree upon terms which he could advise her to accept. There is no sufficient proof of any prior verbal agreement which bound anybody. That fact is entirely evident from the subsequent negotiations in which, for the first time, the terms of the new arrangement were discussed, and which went upon the concession that those terms remained to be agreed upon.

They were agreed upon as between the husband and the plaintiff, but were understood to bind nobody until accepted by the wife, who owned the property, and to be evidenced by her execution of the lease. Undoubtedly, both parties assumed that the terms which were satisfactory to the husband would be so to the wife and lead her to execute the lease, but he did not bind himself to give or procure a lease, and both parties understood that the actual contract when made was to be between the wife and the plaintiff. All that preceded that was preliminary and tentative, and understood to be dependent upon the ultimate assent of the wife, as owner of the land. That was the view of the General Term, and we think it correctly interpreted the negotiations between the parties.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.